## ANDREW ELIX v. STATE.

No. A-10169. June 2, 1943.
(138 P. 2d 139.)

46

John F. Thomas, of Lawton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, P. J.   The defendant, Andrew Elix, was convicted in the district court of Comanche county of the crime of manslaughter in the second degree and sentenced to serve two years in the State Penitentiary.

In his appeal filed herein the defendant states that the only issue to be determined "is whether the shooting was accidental."

The defendant and his wife were negroes who operated a rooming house and whisky joint in the city of Lawton.   In this place they had four negro girls who stayed there to entertain negro soldiers, and other visitors who came there for whisky and entertainment.   A colored division of soldiers was encamped at nearby Fort Sill and many of them patronized defendant's business. The deceased was one of these colored soldiers.

The testimony by several witnesses for the state was that the defendant had been drinking considerably during the day of December 24, 1940, which is the date of the alleged homicide.   That he had brandished a gun a time or two during the day and had fired one or more shots.

One of the witnesses swore that she saw the defendant pointing a gun at Alma Joe Jennings in the morning, and that night, before the fatal shot was fired, she saw him point a pistol at a negro who was called "Pappa Man".

The proof showed that earlier in the evening the defendant and his wife had quarreled, and the wife went into the bathroom with a pistol and the defendant was in the bedroom with a pistol and they each fired a shot, apparently trying to scare each other.

Later in the evening two negro women commenced to scuffle in one of the rooms and the wife of the defendant ran into the room with a gun, stating, "You all aren't going to tear up my house." About that time the defendant ran into the room, grabbed the pistol from his wife and said "I'll fix this," and whirled and fired, killing the deceased who was sitting over at a table with some companions and was not engaged in the controversy. It is apparent from all of the evidence that there was no intent on the part of the defendant to kill the deceased.

The defendant's testimony was that he heard the women scuffling in the front room and ran in, saw his wife with the pistol and commenced scuffling with her, trying to take the pistol away from her, and in the scuffle the pistol was accidentally discharged, striking the deceased and killing him.

The court instructed the jury upon manslaughter in the first degree, manslaughter in the second degree, and further defined justifiable and excusable homicide. These instructions seem to be fair. No exceptions were taken to any of the instructions and no question is raised that the instructions did not fully present the law of excusable homicide.

In the case of Philby v. State, 64 Okla. Cr. 1, 76 P. 2d 412, 415, the court quoted with approval from 13 Ruling Case Law, p. 863, as follows:

"Whether in any particular case the homicidal act was the result of accident must be gathered from all the

facts and circumstances surrounding the transaction, and it is peculiarly within the province of the jury to determine this, according to the well settled rules of law."

In the case of Gaunce v. State, 22 Okla. Cr. 361, 211 P. 517, 518, this court distinguished between justifiable homicide and excusable homicide, as follows:

"There is an important difference between justifiable homicide and excusable homicide, as defined by our Compiled Statutes 1921, §§ 1752, 1753 (21 O.S. 1941 §§ 731, 732). Justifiable homicide is the taking of human life under circumstances of justification, as a matter of right, such as self-defense, or other causes set out in the statute. Excusable homicide is where death results from a lawful act by lawful means, accomplished accidentally or by misfortune or misadventure, or so accomplished with sufficient provocation, with no undue advantage and without unnecessary cruel treatment. Wadsworth v. State, 9 Okla. Cr. 84, 130 P. 808."

21 O.S. 1941 § 716 provides:

"Every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree. R.L. 1910, § 2325."

Culpable negligence is defined as the omission to do something which a reasonable and prudent person would do, or the want of the usual and ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions. Philby v. State, supra.

The issues presented a question for the determination of the jury. There is abundant evidence to support their finding.

Counsel for the defendant, without citation of authority, alleges that the court erred in connection with the proceedings when the jury returned to the courtroom, after the case was finally submitted, and inquired as to whether they could suspend the sentence. The record discloses the following: (the jury comes into the courtroom)

"By the Court: All right, gentlemen, have you arrived at a verdict? By a Juror: We want to ask you a question? By the Court: All right. You can ask the question. By a Juror: Does this jury have a right to state the penalty and then suspend that penalty? By the Court: No, the jury has no power at all to suspend sentences. That is within the province of the court. By a Juror: You didn't cover that within the instructions. By the Court: Now, the jury has no power to suspend sentences, The court can suspend sentences, but the jury cannot. The jury doesn't have that power. They only have the power to pass upon his guilt or innocence. You don't have any power to suspend sentences, but the court does have such power. All right. (Thereupon, the jury retires from the courtroom.) * * * (Thereupon, the jury enters the courtroom.) By the Court: Gentlemen, have you arrived at a verdict? By a Juror: We have. By the Court: All right, pass it up. (Reads verdict). Is that the verdict of all you, gentlemen? By Jurors: Yes, sir. By the Court: So say you all? By Jurors: Yes, sir. By the Court: Now, gentlemen, through inadvertence I gave you a misstatement. A while ago you came in and asked the court if you could, if you had the power, if the jury had the power to suspend sentences. I advised you that the jury had no such power. I was correct in that. I also advised you that the court did have the power and I was in error in this: That the court does have the power to suspend sentences in all crimes except murder and manslaughter and arson. I was thinking at the time, without referring to the statutes, that the court did have the power to suspend sentences for manslaughter in the second degree, but not so. The statute just says man-

slaughter, which includes manslaughter in the first degree and manslaughter in the second degree, so neither the jury nor the court has the power to suspend manslaughter verdicts, whether it be in the first degree or second degree. I thought I had better make that explanation to you. With that explanation, is it still your verdict, all of you say it is still your verdict to find the defendant guilty and fix his punishment at two years in the State Penitentiary? By Jurors: Yes, sir. By the Court: Is that the verdict of all of you? By the Jurors: Yes, sir."

A short while before this occurred the record discloses that the jury had returned a verdict of guilty of manslaughter in the second degree, but leaving the punishment to be fixed by the court, and that the court refused to receive said verdict but sent the jury back for further deliberation, after which the proceedings hereinabove quoted occurred.

There would be no justification for our holding that the jury would not have convicted defendant had they not been influenced by the belief that the court would suspend the sentence, in view of the fact that they had, prior to their final verdict, returned a verdict of guilty, leaving the punishment to the court. In addition to that, the court specifically advised them when the last verdict was returned that he did not have the power to suspend the sentence in a conviction for manslaughter, and then, after being so advised, each of the jurors affirmatively stated that they desired the verdict to remain as it was written.

It is our conclusion that the verdict of guilty is fully justified under the law and the evidence and the punishment which was assessed the defendant could hardly be said to be excessive in view of the circumstances surrounding the homicide and the defendant's apparent

utter disregard for the safety of other persons in his discharging of the pistol.

The judgment of the district court of Comanche county is accordingly affirmed.

BAREFOOT and DOYLE, JJ., concur.