**Martin C. HOLLOWAY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–734.**

Court of Criminal Appeals of Oklahoma.

June 15, 1976.

Rehearing Denied June 24, 1976.

Hubert Hargrave, Wewoka, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge.

The Appellant, Martin C. Holloway, hereinafter referred to as defendant, was charged with Murder, tried before a jury in the District Court of Seminole County, Case No. CR–72–136, and convicted of the crime of Manslaughter in the First Degree. Punishment was assessed at a term of twenty (20) years under the custody and control of the Department of Corrections of the State of Oklahoma. The defendant has subsequently perfected his timely appeal.

Briefly stated, the evidence adduced at trial is as follows: Seminole County Undersheriff Douglas Arnold testified that on the 28th day of September, 1972, at approximately 10:50 P.M., he arrived at the scene of a shooting at a home approximately one and one-half miles West of Wewoka. Other law enforcement officers were already at the scene and the witness observed a body lying on the ground a short distance behind a Cadillac which had its trunk open. A .410 shotgun was found lying near the body. In the chamber of the weapon was one spent cartridge and three (3) live rounds of ammunition. The witness further stated that he observed the body of the victim at the funeral home and that the discharge had entered the base of the chin and passed through the throat, existing out the back.

Dr. Claude B. Knight then testified that he was the medical examiner for Seminole

County and that upon his arrival at the scene, he found Richard Charles Smith dead of a gunshot wound. He described the wound as a "through and through wound" stating that the entry wound was at the front of the neck and the exit wound at the back. In his opinion death was instantaneous.

I. V. Frances Alexander testified that on the evening in question he was living in Wewoka with his mother and was walking home at approximately 10:00 P.M. when he passed the defendant's home and saw the defendant and the decedent, Alexander's cousin, sitting in the open trunk of the defendant's Cadillac. He stated that he stopped to talk to the men and had a conversation concerning drinks. He explained that there was a .410 shotgun in the trunk of the car which the deceased picked up and began to examine. The defendant told Smith to "put my gun down" and Smith complied. The defendant then stated, "If you do–if you touch my gun again, I'll kill you." Shortly after that statement the deceased touched the gun again, the defendant said "No, you don't" and grabbed the gun. Smith then reached for the gun and they both began struggling over the weapon. Subsequently the defendant took control of the gun, pumped it, put it to his shoulder and pulled the trigger. After watching Smith fall, the witness went into the house and called an ambulance. Alexander then went home.

On cross-examination, Alexander stated that Smith and Holloway were arguing over who had bought the most drinks and that they were both drinking at the time. He further stated that he called the ambulance because he could not stand the sight of his cousin's dead body. On redirect examination, Alexander stated that he never saw the deceased display a weapon or heard him threaten the defendant. He further related that the two men did not appear drunk and that Smith had not exhibited any animosity towards the defendant when he had been

with them earlier in the day. The State then rested.

The defendant then took the stand and testified in his own behalf stating that on the 28th day of September, 1972, he worked until approximately 7:00 P.M. and then picked up the decedent Smith and Ural Carolina at his house. They proceeded to a pool hall where they picked up Alexander and drove to a liquor store to buy a quart of wine. Subsequently they returned to the Holloway home and they left in the Cadillac with Alexander driving to take Carolina home. When they returned the defendant went around to the back of the house for a moment and when he returned the trunk of the car was open and Smith asked him for a drink. When no drink could be found, Smith reached into the car and grabbed the gun. The defendant told Smith, "Well, no, don't play with the gun around this house because the kids is in the house." Smith put the gun back but in a few minutes later he grabbed it again and the defendant and Smith began "tussling over it." The defendant remembered the gun going off and Smith falling. The defendant further stated that he had known the victim for 16 years and that they had been very good friends.

On cross-examination the defendant stated that Alexander had been with them the entire evening from the time they picked him up at the pool hall until after the incident. He further denied threatening to kill Smith, putting the gun to his shoulder, pumping it or firing it.

Adrian Thomas then testified that on the evening of the shooting he was sitting on his front porch when he saw Smith, Holloway and Carolina drive past his house. He could not see who was driving. Ural Carolina then recounted the events of the evening up until the time he was taken home. His testimony as to those events was similar to that of the defendant. On cross-examination he stated he knew nothing of the actual shooting.

■ The defendant's first assignments of error essentially urge that the trial court erred in submitting to the jury certain instruction and further erred in failing to include an instruction on justifiable homicide. In particular the defendant contends that Instruction Six which reads as follows:

"Homicide is manslaughter in the first degree, in the following cases:

(1) When perpetrated without a design to effect death by person while engaged in the commission of a misdemeanor.

(2) When perpetrated without a design to effect death and in a heat of passion, but in cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitutes excusable or justifiable homicide.

(3) When perpetrated unnecessarily, either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed.",

is erroneous since it tended to lead the jury to believe that if a deadly weapon was the cause of death then the defendant would be guilty of manslaughter in the first degree even though it was an accident. We must disagree. Instruction Six is in the same form and wording of 21 O.S.1971 § 711. The defendant submitted no requested instruction and the submission of the instruction in the form of statute is not error in the instant case. See *Sharp v. State,* Okl.Cr., 407 P.2d 593.

Defendant further argues that the jury became confused and felt that, because the trial court instructed that first degree manslaughter could be carried out by the use of a dangerous weapon, the defendant was guilty since there was a struggle over a gun. However, as stated in the State's brief, it is clear that had the jury believed Smith's death was an accident Instruction Six would not have deterred them so finding since sub-paragraph 2 of the Instruction was qualified by the clause:

"unless it is committed under such circumstances as constitutes excusable or justifiable homicide.";

and the trial court submitted an excusable homicide instruction which was verbatim from 21 O.S.1971 § 731, the statute defining excusable homicide.

■ The defendant further argues that the trial court erred in not submitting an Instruction on justifiable homicide. However, a reading of the transcript reveals that the defendant's defense was one of excusable homicide or accident and the submission of a justifiable homicide instruction concerning self-defense or the defense of others would have been erroneous in the instant case. See *Thompson v. State,* Okl. Cr., 507 P.2d 1271.

■ It should be further noted that the record does not reveal that the defendant submitted any requested instructions. We have consistently held that where defense counsel is not satisfied with the instructions that are to be given, or desires the trial court to give a particular instruction, or to more definitely or sufficiently state any proposition embraced within the proposed instructions of the trial court, it is the duty of defense counsel to prepare and present to the trial court such desired instructions and to request that they be given. In the absence of such request, this Court will not reverse the case if the instructions generally cover the subject matter of the inquiry. See *Moreau v. State,* Okl.Cr., 530 P.2d 1061, and *Bryant v. State,* Okl.Cr., 521 P.2d 402. It is therefore the opinion of this Court that all of the arguments and assignments of error presented by the defendant concerning the instructions submitted by the trial court in the instant case are without merit.

■ The defendant's last assignment of error contends that due to the systematic

exclusion of black veniremen and since there were no blacks on the jury panel, he was denied a fair and impartial trial. However, the transcript reveals that neither party requested that the preliminary proceedings including the voir dire of prospective jurors be preserved for later transcription. In *Landrum v. State,* Okl.Cr., 486 P.2d 757, this Court held that it has long been the rule that unless the voir dire or other court proceedings are transcribed by the court reporter and are contained in the record there is nothing for this Court to review. See also *Carr v. State,* Okl.Cr., 514 P.2d 413, wherein the same issue was raised and this Court refused to consider same since no record of the voir dire examination had been made.

■ As stated in *Bennett v. State,* Okl. Cr., 448 P.2d 253, a defendant is not automatically deprived of a fair trial simply because no member of his own race is a member of the jury panel. Since there is nothing more than a mere allegation of an intentional and systematic exclusion of blacks from the jury panel and since there is no proof of such an intentional and systematic exclusion, the defendant's assignment is without merit.

From a thorough examination of the record as a whole, it is this Court's opinion that the defendant received a fair and impartial trial before a jury, no fundamental or material right of the defendant was prejudiced and the conviction appealed from should be, and the same is hereby AFFIRMED.

It is noted however, that the judgment and sentence entered in this cause on the 9th day of June, 1975, erroneously finds that the defendant was guilty of the crime of Murder. This is evidentally a typographical error and the trial court is instructed to correct said error by Order Nunc Pro Tunc.

BRETT, P. J., and BUSSEY, J., concur.