Dale Roschille LEE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–34.

Court of Criminal Appeals of Oklahoma.

Nov. 23, 1981.

Demetri Anastasiadis, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Dale Roschille Lee, was convicted in the District Court of Oklahoma County, Case No. CRF–79–670, of the crime of Murder in the First Degree, in violation of 21 O.S.Supp.1980, § 701.7. The jury assessed his punishment at life imprisonment, and from this judgment and sentence, a timely appeal to this Court has been filed.

In the early morning hours of February 20, 1979, the appellant and a friend, John Bolton, went to the house of Elvis Hodges, a bootlegger. After a short conversation on Hodges' porch, Hodges allowed them to enter the house where, according to the appellant, Hodges went into the bedroom to get a bottle of whiskey for Bolton. Through the open bedroom door, the appellant could see another man, Eugene Pierce, sitting on the bed.

As Hodges returned to the front room, he said "I thought so," grabbed Bolton, jerked him into the room and shut the door. In a few minutes, the appellant heard Bolton yell, "Help me, Dale. A man has hit me in the head with a hatchet and they are trying to kill me." The appellant asserts that at this point, and not before, he pulled out a gun given to him earlier by Bolton, snapped the gun twice with no explosion, went to the partially opened bedroom door, saw Bolton's bloody head, pointed the gun through the door, and told the man to hold it. The gun fired, killing Hodges. The defendant insists that someone fell against his arm, causing the gun to go off.

After Hodges was shot, Bolton and the appellant quickly searched the room, ostensibly for weapons which Pierce could use against them, then fled the house with a case of whiskey and a money sack containing seven dollars ($7.00). Police officers arrested the appellant the following eve-

ning, took him into custody and interrogated him for two (2) hours. The interrogation resulted in a signed confession in which the appellant admitted that he went to Hodges' house intending to rob him.

In his first assignment of error, the appellant contends that the trial court erred in denying the appellant's motion to quash the jury panel, alleging that the prosecutor used his peremptory challenges to systematically exclude blacks from the jury.

The prosecutor used three (3) of his five (5) peremptory challenges to exclude from the jury the only three (3) blacks who were called for duty. When the appellant moved to quash the panel, charging systematic exclusion of blacks and denial of due process and equal protection, the prosecuting attorney explained his reasons for the challenges, and the judge denied the motion to quash, strictly preserving the right of the State to exercise peremptory challenges without having to justify the exclusions.

■ Case law and statutory authority support the trial judge's decision. Traditionally, the motives for peremptory challenges of both the defense and the prosecution are immune from scrutiny, and purposeful discrimination cannot be assumed. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); 22 O.S.1971, § 654. In *Swain*, the U. S. Supreme Court, reviewing a case in which the appellant alleged a systematic exclusion of blacks, held that "[T]he presumption . . . must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury . . . . The presumption is not overcome . . . by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes." See also, *Bennett v. State*, 448 P.2d 253 (Okl.Cr.1968).

■ Although not insurmountable, the appellant's burden of proof in overcoming this presumption is substantial. Cases in this and other jurisdictions suggest that reversal is possible where an appellant shows proof of a studied systematic effort to exclude blacks. *Carr v. State*, 514 P.2d

413 (Okl.Cr.1973); *Moore v. State*, 461 P.2d 1017 (Okl.Cr.1969); *Bennett v. State, supra; Dixon v. State*, 89 Okl.Cr. 205, 206 P.2d 231 (1949). The U. S. Supreme Court did, in fact, reverse a conviction from this jurisdiction after the appellant showed that Negroes for a long period of time had been excluded from jury service in Okmulgee County, solely on account of their race. *Hollins v. State of Oklahoma*, 295 U.S. 394, 55 S.Ct. 784, 79 L.Ed. 1500 (1935). But other challenges, buttressed by equivocal statistics of the racial composition of juries over an extended period of time, have met with no success. *United States v. Nelson*, 529 F.2d 40 (8th Cir. 1976); *United States v. Carter*, 528 F.2d 844 (8th Cir. 1975); *Swain v. Alabama, supra.*

In the present case, the appellant's only evidence supporting his allegation of purposeful discrimination is the fact that the trial judge disagreed with the prosecutor's assessment of two (2) of the three (3) blacks. This disagreement alone is not enough to undermine the presumption in favor of the challenger. Where the appellant presents little more than an allegation unaccompanied by proof of systematic and intentional exclusion of blacks from the jury, the trial court does not err in denying a motion to quash the jury panel for such a cause. *Hollins v. State, supra*, see also, *Holloway v. State*, 550 P.2d 1352 (Okl.Cr. 1976). To rule otherwise would significantly undermine the purpose of the peremptory challenge, which is to give to each side of a controversy a limited opportunity to exclude jurors who, because of bias, prejudice, or some other less definable trait, are not likely, in the litigant's opinion, to adjudge the proceeding fairly. See, 47 Am.Jur.2d, Jury, § 233 (1969).

The appellant next claims that the police lacked probable cause for his arrest, thereby making it error for the trial court to admit the appellant's confession. According to the appellant, his arrest was based only on information given to the police by John Bolton, the accomplice, and Anthony Quinn, to whose home the appellant and Bolton fled after the homicide; the appellant contends that neither Quinn nor Bolton were shown to be reliable sources of information, and that the arresting officer had neither a description or a full name of the suspect "Dale." Applying the test for a valid warrantless arrest as expressed in *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), and quoted with approval in *Babek v. State*, 587 P.2d 1375 (Okl.Cr. 1978), the appellant insists that at the moment of arrest, the officer did not have reasonably trustworthy information sufficient to warrant a prudent person in believing that the arrestee had committed an offense, and, therefore, that as fruit of the poisonuous tree, the confession should not have been admitted at trial.

The appellant has applied the appropriate test for the validity of a warrantless arrest, but, after a thorough examination of the record, we believe that the officer did have sufficient trustworthy information to warrant the arrest. The arresting officer had been advised by radiogram that the suspect "Dale," a black male, would possibly be wearing light-colored tennis shoes, a light print-colored shirt, a light blue quilted tie, and a light-weight jacket. Officers had obtained parts of this description from Eugene Pierce (an eyewitness) and John and Mary McNac (neighbors who viewed part of the incident from their home). Because Bolton and the appellant fled to Anthony Quinn's home immediately after the homicide, officers were able to glean additional information from Quinn, who described Bolton's head wound, the appellant's gun, the appellant's statements implicating him in the homicide, and the bar (The Boots and Saddles Club) where the appellant was expected to be at a certain time. Quinn's information led to Bolton's arrest, and Bolton was thereafter taken to the Boots and Saddles Club where he positively identified the appellant as his accomplice.

As this Court has stated many times, the grounds for the arrest need not be absolute or irrefutable. *Reynolds v. State*, 575 P.2d 628 (Okl.Cr.1978); *Stidham v. State*, 507 P.2d 1312 (Okl.Cr.1973); *Welch v. State*, 30 Okl.Cr. 330, 236 P. 68 (1925). A

warrantless arrest is not unlawful if the arresting officer, from his own knowledge or from facts communicated to him by others, has reasonable grounds to believe that the person arrested has committed a felony. *Tittle v. State,* 539 P.2d 422 (Okl.Cr.1975); *Darks v. State,* 273 P.2d 880 (Okl.Cr.1954). Under the circumstances presented in this case, the arresting officer did have reasonable grounds to arrest the appellant, and the trial court correctly refused to exclude the resulting confession from the trial.

In his third assignment of error, the appellant contends that his will was overborne by police officers during interrogation. He presents his age (twenty-three), his inability to read, his lack of counsel, and his state of mind as factors giving rise to a vulnerability which the interrogators exploited, extracting from the appellant a confession containing a critical error in regard to his intent at the time of the homicide. Thus, he submits that the trial court committed prejudicial error in admitting the confession into evidence.

■■■ The issue to be reviewed on appeal is not the accuracy or truthfulness of the confession but voluntariness. See, *United States v. LaVallee,* 282 F.Supp. 718 (D.C.N.Y.1968). The appropriate approach to the issue of voluntariness, as stated in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), is to consider the totality of the circumstances, both the characteristics of the accused and the details of the interrogation. Using this approach, we find that the State presented sufficient evidence of voluntariness to allow the confession to be used at trial. The appellant was given the *Miranda* warnings and appeared lucid. The interrogating officers spoke with the appellant for approximately one-half (½) hour soon after he was taken into custody. A typed statement was made; the officer would ask a question which was typed by a secretary, and the appellant would give an answer which was in turn typed by the secretary. An officer then read the entire statement to the appellant, and the appellant, two (2) officers and the secretary signed all four (4) pages. At

the evidentiary hearing, the interrogating officer denied making any threats or promises designed to weaken the appellant's capacity for self-determination, and the appellant failed to present anything more than conjecture, regarding any coercive or overbearing behavior, that might have undermined his will. The appellant relies mainly on the fact that he cannot read, submitting that he was unable to check the accuracy of the typed statement. The confession contains a statement that the appellant intended to rob Elvis Hodges; but, at trial, the appellant denied ever making that admission, and insists that he went to Hodges' house only to buy whiskey. This alleged discrepancy, standing alone, is not enough to counter the strong evidence establishing voluntariness. In an analogous case, this Court deemed a confession voluntary even though the accused did not have his glasses and was unable to read the typed statement. *Anderson v. State,* 541 P.2d 1091 (Okl.Cr.1975). This kind of handicap places a heavier burden on the interrogating officer to ensure that the accused understands the typed statement, but it does not in and of itself carry enough weight to counter evidence which in every other way indicates that the accused gave the confession voluntarily. This assignment of error is without merit.

■ In his fourth assignment of error, the appellant contends that the trial court abused its discretion in prohibiting the appellant from cross-examining witnesses on certain subjects. Specifically, the State's evidence tended to show that the appellant went to Hodges' home intending to rob him, and that he took a gun in order to carry out his plan. To counter this inference, the appellant wished to cross-examine a police officer regarding the lack of safety in the neighborhood, bolstering his assertion that he carried the gun only to protect himself and his friend. The appellant also wished to cross-examine a police officer regarding some of the statements made by the appellant's accomplice; these statements supposedly would have corroborated the appellant's own statement at trial, that there

was no intent to rob. The prosecution objected to, and the trial judge sustained, both lines of questioning as being irrelevant. The appellant now asserts that his inability to present this evidence amounts to a denial of his right to cross-examine on every material issue raised by the prosecution.

The law on this issue reflects a struggle between countervailing interests. On the one hand, this Court has said that trial judges should give wide latitude in the admission of evidence to establish motive, reminding trial courts that "the fact that evidence is weak or inconclusive goes to its weight, a jury question, rather than its admissibility." *Frye v. State*, 606 P.2d 599 (Okl.Cr.1980); see also, *Bowman v. State*, 585 P.2d 1373 (Okl.Cr.1978). On the other hand, this Court has repeatedly said that the relevance and materiality of evidence are matters within the discretion of the trial judge, whose judgment will not be disturbed without a clear showing of abuse resulting in severe prejudice to the accused. *Mills v. State*, 594 P.2d 374 (Okl.Cr.1979); *Graves v. State*, 563 P.2d 646 (Okl.Cr.1977); *Noah v. State*, 562 P.2d 950 (Okl.Cr.1977); see also, *Young v. Anderson*, 513 F.2d 969 (10th Cir. 1975).

In light of the entire proceeding, this Court agrees with the trial court's decision to exclude the testimony regarding the statement of the accomplice; the introduction of only isolated parts of Bolton's signed statement would have carried with it the danger of taking words out of context. The trial judge's decision to exclude testimony as to the dangerous neighborhood, however, is more vulnerable to attack. Even though weak and inconclusive, the information would aid the accused in explaining his motives for carrying a gun; if the jury believed the accused's version of the incident, this information would be corroborative. It does not seem likely, however, that the omission of this information severly prejudiced the appellant, and for this reason, we will not interfere with the trial court's ruling.

In the appellant's fifth assignment of error, he contends that the trial judge committed a reversible error in refusing to give instructions on the defense of a third person. It is well-settled that an accused is entitled to an instruction on any theory of defense supported by the evidence, as long as that theory is tenable as a matter of law. *Green v. State*, 611 P.2d 262 (Okl.Cr.1980); see also, *United States v. Hall*, 536 F.2d 313 (10th Cir. 1976). In the present case, the appellant requested, and was granted, an instruction on excusable homicide, quoting verbatim Title 21 O.S. 1971, § 731.[1] But the appellant requested, and was refused, an instruction on homicide, justified on grounds of defense of a third person. To clarify these two defenses, it is enough for our purposes to say that an excusable homicide is the taking of a human life by accident or misfortune, and, in contrast, a justifiable homicide is the taking of a life as a matter of right, as in self-defense. *Elix v. State*, 77 Okl.Cr. 45, 138 P.2d 139 (1943).

The statute that normally covers justifiable homicide in circumstances similar to those in the case before us is 21 O.S.1971, § 733, which essentially restricts the defense of a third person to a limited group of people: spouses, parents, children, servants, and servants' employers. This restriction in § 733, on the relationship of the defender to the third person, renders the appellant's theory of justifiable homicide in defense of his friend, unfeasible as a matter of law. The appellant, however, does not apply § 733, to his case. In a novel legal argument, he has yoked the excusable

---

1. Homicide is excusable in the following cases:
   "1. When committed by accident and misfortune, in lawfully correcting a child or servant, or in doing any other lawful act, by lawful means, with usual and ordinary caution, and without any unlawful intent.

   "2. When committed by accident or misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat provided that no undue advantage is taken, nor any dangerous weapon used, and that the killing is not done in a cruel or unusual manner."

homicide statute, 21 O.S.1971, § 731(1), with the statute governing use of force in defense of a third person, when the charge is assault or battery, 21 O.S.1971, § 643(3). Title 21 O.S.1971, § 643(3), essentially allows the use of force to come to the aid or defense of *any* (Emphasis ours) person, provided the force or violence used is not more than that sufficient to prevent such offense. The appellant argues that he committed a justifiable assault in defense of his friend, § 643(3), and that that lawful act accidentally resulted in the death of the aggressor, § 731(1).

We need not decide here whether the appellant's joinder and construction of § 643 and § 731 create a valid legal argument acceptable in this jurisdiction. Assuming, arguendo, that these two statutes may be read together, our reading of § 731 compels us to label as harmless error the trial court's refusal to instruct on defense of any third person, for the incident, even as described by the appellant, qualifies precisely for application of § 731(2), and not § 731(1).[2] The homicide was committed, according to the appellant, on a sudden provocation or sudden combat (Hodges' attack on Bolton) as described in § 731(2); applying this paragraph of § 731, to the case at bar, it is clear that the fact that the appellant used a dangerous weapon eliminates this theory from his arsenal of available defenses. We are aware that the appellant may have felt compelled to present this rather tenuous legal argument by the restrictive list of relationships set out in § 733. That statute justifies homicide in defense of only certain close family or household members. Defense of a brother, sister, co-worker, or stranger on the street is not protected by this statute. Some jurisdictions have expanded this protection to any third person, see, 40 Am.Jur.2d, Homicide, § 170 (1968), and there are cogent public policy arguments in support of that expansion. But this change, if it is to come in this jurisdiction, must emanate from the legislature and not from the judiciary. We recommend that the legislature give this issue their attention.

In the appellant's final assignment of error, he contends that the sentence of life imprisonment for murder in the first degree constitutes cruel and unusual punishment, in contrast to the four (4) year sentence received by the appellant's accomplice who pled guilty to the lesser charge of manslaughter. The appellant testified that it was his accomplice, Bolton, who planned a robbery, supplied the weapons, and gave the orders during the incident that led to Hodges' death. The appellant argues that because Bolton was the more dominant of the pair, and yet got only four (4) years' imprisonment, the appellant's own sentence should be reduced accordingly to four (4) years.

It is determinative of this issue that the appellant received the minimum punishment allowed by statute for the offense of murder in the first degree. 21 O.S.Supp.1980, § 701.9. This Court has the power under 22 O.S.1971, § 1066, to reverse, affirm or modify the judgment or sentence being appealed; but, as a matter of law, modification of the punishment must be within the limits fixed by the statute for the offense for which the accused was convicted. *Moore v. State*, 75 Okl.Cr. 222, 130 P.2d 114 (1942); see also, *Griffith v. State*, 516 P.2d 1348 (Okl.Cr.1973); and, *Meeks v. State*, 501 P.2d 887 (Okl.Cr.1972). A thorough review of the record of this case has uncovered no compelling evidence, and no reversible error, that would justify this Court in modifying the judgment. Despite the irony of the seemingly disproportionate punishments assigned to the two (2) people responsible for the death of Elvis Hodges, the fact remains that a jury of twelve (12), properly instructed on the lesser included charge of manslaughter, assessed all the evidence and found the appellant guilty of murder in the first degree. We cannot disturb their finding on the basis of irony alone.

For all the above and foregoing reasons, the judgment and sentence appealed from is AFFIRMED.

2. See note 1 supra.

BRETT, P. J., concurs.

CORNISH, J., concurs in results.