Hank Lee USSERY, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–280.

Court of Criminal Appeals of Oklahoma.

June 23, 1988.

Rehearing Denied Aug. 8, 1988.

Lisbeth L. McCarty, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Hank Lee Ussery, was convicted by a jury of the crime of First Degree Manslaughter in violation of 21 O.S.1981, § 711(2), in the District Court of Carter County in Case No. CRF–82–156 and was sentenced to life imprisonment.

During the spring of 1982, the appellant and the victim, James Gibson, were sharing living space at a motel in Ardmore, Oklahoma, while they sought employment as temporary laborers. On June 10, 1982, the

victim, Gibson, while intoxicated, became involved in an argument with a married couple who were present at the motel. The appellant became involved when he criticized his roomate's habit of drinking and attempting to flirt with other men's wives. Gibson, angered at this interference, locked himself in the motel room and continued drinking.

According to the appellant's account of the subsequent events, after having the motel clerk unlock the door, the appellant entered the room, sat down on his own bed, which was farthest from the door, and tried to talk to Gibson in an effort to calm him down. The appellant testified that Gibson became even more abusive, called the appellant names, and made threatening gestures with an empty whiskey bottle.

Concerned for his own well-being, the appellant testified that he picked up a large hunting knife that he had purchased as a gift for his father to protect himself while he attempted to leave the motel room. The appellant claims that as he was attempting to leave, Gibson lunged at him. When appellant raised his arms to ward off the attack, Gibson was accidentally stabbed in the throat. The appellant testified that at that point, Gibson stepped back clutching his wound saying "you stabbed me", and ran from the motel room.

Other guests at the motel testified that they became aware of Gibson's plight when the appellant came to their door seeking help, saying "I think I hurt my friend." By this time, Gibson, injured and bleeding profusely, had made his way to the motel office. The clerk immediately called the police and Gibson collapsed at the doorway.

The first officer to arrive at the scene observed the appellant apparently walking away from the motel. Upon seeing the police car, the appellant pointed to the motel office, turned and began walking back towards where Gibson lay. As he turned to return to the motel, the appellant threw the hunting knife into some shrubbery that bordered the motel near the street.

By the time the police officer found Gibson, Gibson had died from his wound. One of the guests directed the officer to the appellant, saying "I think that's the guy you want there." The appellant identified himself and cooperated with the authorities. He was arrested that night and charged with First Degree Murder.

The trial lasted two days. Witnesses who were guests at the motel at the time of the killing were subpoenaed from out of State. Ussery presented character witnesses and also testified on his own behalf. He admitted stabbing Gibson but maintained, as his sole defense, that the killing was accidental. The jury returned a guilty verdict of the lesser included offense of First Degree Manslaughter, and assessed punishment at life imprisonment. Ussery timely filed a Motion for a New Trial, which was heard on December 15, 1985.

The trial court initially granted Ussery's motion for new trial, ruling that the verdict was not supported by the evidence. The District Attorney objected and sought relief from this Court through petition for writ of mandamus and prohibition in Case No. P–83–21. That attempted appeal was dismissed because the State may not appeal a discretionary ruling through use of those extraordinary writs. Subsequently, the trial court reconsidered its ruling, vacated its order granting a new trial, and reinstated the judgment and sentence. Ussery now appeals that decision of the trial court alleging various propositions of error.

■ Predictably, the first proposition raised by the appellant is that the trial court erred in reinstating the original judgment and sentence. He argues that while title 22, in 22 O.S.1981, § 952, contains specific provisions for granting a new trial, this title has no provision whereby a trial court is granted the authority to vacate its own order granting a new trial.

Reasoning that since the statutes state that once a new trial has been granted, the parties are "in the same position as if no trial had been had," 22 O.S.1981, § 951, the appellant emphasizes the apparent incongruity of a defendant remaining subject to "the whims of the trial judge's change of heart." Appellant's brief p. 9. He attempts to bolster this argument by citing

two early cases in California for the proposition he raises. See *People v. Hanks*, 35 Cal.App.2d 290, 95 P.2d 478 (1939) and *People v. Paysen*, 123 Cal.App. 396, 11 P.2d 431 (1932).

We are not persuaded by appellant's argument and note that the persuasive value of the cases cited is very limited, at best. We also note that the opposite conclusion has been reached in a much more recent decision by the Colorado Supreme Court. *See People v. Weller*, 679 P.2d 1077 (Colo. 1984).

Since there are no Oklahoma cases which address this issue, we consider the well reasoned discussion by the Colorado Supreme Court in *Weller*, supra., as persuasive on this question. The *Weller* court examined cases from many different jurisdictions and concluded that: "A trial court may rescind its interlocutory order granting a new trial before a final judgment is entered and before a notice of appeal is filed." *People v. Weller*, 679 P.2d at 1080–81 (Citations omitted).

One common thread running through the cases which allows a trial court to reconsider the grant of a new trial is that, in order to comport with due process of law, the motion to reconsider be made in a timely manner. *See e.g. Hasty v. A & B Construction Co.*, 612 S.W.2d 267 (Tex.Civ. App.1981); *Accord State v. Ornelas*, 15 Ariz.App. 580, 490 P.2d 25 (1971); *People v. Phino*, 80 A.D.2d 804, 437 N.Y.S.2d 104 (1981). The appellant here stresses the fact that a span of 10 months expired between the time the trial court entered its order granting a new trial and its order vacating same. (Appellant chooses to disregard the period that all proceedings were stayed during this Court's consideration of the District Attorney's petition.) A mere cursory reading of the above cited cases shows, however, that it is not the number of days that determines whether reconsideration is done in a timely manner. Rather, the determinative point is when final judgment is rendered. The time frames vary in these cases from forty five (45) days in *Hasty supra.*, to fourteen (14) months in *Ornelas, supra.* Our examination of the record in this case reveals that the trial court vacated the order granting new trial only thirty (30) days after we entered our order dismissing the District Attorney's attempted appeal. We do not consider this to be an unreasonable span of time and refuse to adopt a ten (10) day "limitations" period as urged by the appellant.

As to appellant's first proposition of error, we are in agreement with the holding of the Colorado Supreme Court in *People v. Weller*, 679 P.2d 1077 (Colo.1984). A trial court may, at any time prior to the time final judgment is entered in a criminal prosecution, exercise its sound discretion and reconsider its interlocutory order granting or denying a motion for a new trial.

The next proposition of error raised by the appellant is that the court erred in giving the jury instructions numbered eight and nine. We will not consider appellant's assignment of error to instruction number eight because of defense counsel's failure to object, or to offer an alternative instruction. *See Van Woundenberg v. State*, 720 P.2d 328 (Okl.Cr.1986); *Ross v. State*, 717 P.2d 117 (Okl.Cr.1986).

In considering appellant's objection to instruction number nine, we are mindful of the established rule that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–7, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373 (1973). See also *Rowell v. State*, 699 P.2d 651 (Okl.Cr. 1985); *Vigil v. State*, 666 P.2d 1293 (Okl. Cr.1983). After reading all of the instructions given, we are of the opinion that the jury was fairly and accurately instructed regarding the applicable law in this case. Appellant's second proposition of error is, therefore, without merit.

■ The third proposition raised is that prosecutorial misconduct deprived the appellant of a fair trial. Specifically, the appellant makes reference to closing arguments where the District Attorney referred to the jury as "the conscience of the community." Defense counsel's timely

objection was sustained and the District Attorney promptly concluded his argument. From our reading of the transcript of closing arguments, we cannot conclude that the defendant was prejudiced by this comment to the point that he was denied a fair trial. *See Smith v. State*, 656 P.2d 277, 283–4 (Okl.Cr.1982), and *Glass v. State*, 701 P.2d 765 (Okl.Cr.1985). Certain of the comments made by the District Attorney may, by some, be considered as unnecessarily graphic, yet we believe that they still fail to rise to any level of prejudice which would impugn the jury's verdict.

■ The fourth proposition raised is that the appellant received ineffective assistance of counsel because defense counsel did not move for a mistrial after a remark was made by a prospective juror during voir dire. Simply stated, this person asked to be excused because she did not believe that the defendant, if found guilty, would have to serve a complete sentence. The court promptly excused this person and continued voir dire with a replacement. There is nothing in the record to support appellant's claim of prejudice. Even giving appellant's claim the benefit of a doubt, there is nothing here which could possibly rise to the level of ineffective assistance enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984) *rehearing denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). This proposition of error totally lacks merit.

The fifth proposition of error raised is that the procedural history of this case has inflicted cruel and unusual punishment upon the appellant, in violation of the Eighth Amendment to the United States Constitution. This allegation is both lacking in relevant authority and is unsupported by any legal argument. We see no evidence in the record which supports the appellant's contentions and consider this assignment to be frivolous and without merit. *See Sisson v. City of Oklahoma City*, 714 P.2d 1043 (Okl.Cr.1986); *Kimberlin v. State*, 736 P.2d 530, (Okl.Cr.1987).

Appellant's sixth proposition of error is that imposition of a life sentence, based on the facts and circumstances of this case, was excessive. We note the fact that, at the hearing on defendant's motion for new trial, the trial judge agreed, saying: "the sentence shocks the conscious [sic] of this Court." The judge ruled, however, that he was powerless to modify a jury's sentence.

■ As we have repeatedly stated, this Court will not disturb a sentence unless it is so excessive that it shocks the conscience of the court. *Stewart v. State*, 723 P.2d 992 (Okl.Cr.1986); *Bolton v. State*, 702 P.2d 1040 (Okl.Cr.1985); *Hutson v. State*, 550 P.2d 969 (Okl.Cr.1976). Generally, sentences that are within the statutory limits will not be disturbed on appeal. *Luman v. State*, 638 P.2d 472 (Okl.Cr. 1981). The life sentence here is within the range provided by statute. 21 O.S.1981, § 715. We are, however, persuaded by the trial judge's comments and argument of counsel that imposition of the maximum sentence, in this case, may be excessive to the point of shocking the conscience of the court.

There are four facts which weigh in favor of leaving the sentence undisturbed: (1) there was an unjustified homicide brought about through the use of a dangerous weapon; (2) the appellant did attempt to hide the weapon; (3) the appellant was apparently leaving the scene when the police arrived, and (4) the appellant's criminal record.

The factors which tend to favor mitigation of punishment are: (1) the appellant's apparent and understandable fear of injury at the hands of the deceased; (2) the fact that the appellant did attempt to find help for the deceased immediately after the wound was inflicted; and (3) the level of cooperation with the authorities at the scene and throughout the investigation. Other considerations are: (4) the evidence of the defendant's good reputation during his stay in the community; and (5) the trial judge's reaction to the sentence. We agree with counsel for the appellant that the sentence under the circumstances of this case shocks the conscience of this Court and that it should be modified.

Appellant's last proposition of error is that cumulative errors, referring to propositions I–VI, denied the appellant a fair trial. It should be clear from our discussion of these propositions that there is no merit to this final argument.

Accordingly, the verdict and judgment that the appellant is guilty of Manslaughter, First Degree is AFFIRMED. The sentence, however, is modified from life, to a term of forty-five (45) years' imprisonment.

BRETT, P.J., concurs.

PARKS, J., dissents.

PARKS, Judge, dissenting:

I write separately to express my disagreement with the majority's holding and rationale. In granting appellant's motion for a new trial, the trial court stated:

> To put it quite bluntly, in my view of the case, the Defendant should have either been convicted of First Degree Murder having caused the death of this decedent by a premeditated act, or he should have been acquitted. The only reason that the instruction on Manslaughter First Degree was [given is] the mandate of *Morgan v. State*, 536 P.2d 952, a 1975 case by the Court of Criminal Appeals. I believe that this was an error on my part for two reasons: one, Morgan requires that when voluntary—no. Requires a voluntary Manslaughter instruction when the Defendant's defense is self defense. *His defense was not self defense, but was excusable homicide.* This may be a, well, I guess a splitting of hairs. I think that's what Courts must often do. And two, and here I want to be very specific, the Morgan case itself in the opinion of this Court, and this is going to sound like the District Court reversing the Court of Criminal Appeals, is founded on a faulty premise. ... For this specific reason, the Motion for New Trial is sustained, and the cause is referred to the Chief Judge for a trial setting. I don't think I need to go further. (emphasis added)

Subsequent to the trial court's reinstatement of appellant's conviction, this Court overruled *Morgan* as being too inflexible a rule in *Walton v. State*, 744 P.2d 977, 978–79 (Okla.Crim.App.1987) (Parks, J., Specially concurring). Although *Morgan* was controlling at the time of appellant's trial, contained within the trial court's original order for a new trial is an independent ground for reversing this conviction, which is the seed of my dissent.

The gravamen of appellant's complaint is he raised the theory of accidental homicide, not self-defense, and the merging, over his objection, of the two theories in the same jury instruction confused the jury, thereby depriving him of a fair trial. I am compelled to agree.

In Oklahoma, homicide is classified into four categories: (1) Murder; (2) Manslaughter; (3) Excusable homicide; or (4) Justifiable homicide. 21 O.S.1981, § 692. Both the common law and our statutes distinguish between excusable homicide and justifiable homicide. *See* R. Perkins & R. Boyce, *Criminal Law* 1123–27 (3rd ed. 1982). *Compare* 21 O.S.1981, § 731 with 21 O.S.1981, § 733.

Excusable homicide is the taking of a human life by accident or misfortune; in contrast, justifiable homicide is the taking of a human life as a matter of right, as in self-defense. *Lee v. State*, 637 P.2d 879, 884 (Okla.Crim.App.1981); *Elix v. State*, 77 Okl.Cr. 45, 138 P.2d 139, 141 (1943). In either case, no criminal penalty attaches.

Title 21 O.S.1981, § 731(1) defines excusable homicide as "When committed by accident or misfortune ... in doing any other lawful act, by lawful means, with usual and ordinary caution, and without any unlawful intent."

> When the death of a human being is the result of accident or misadventure, in the true meaning of the term, no criminal responsibility attaches to the act of the slayer. When it appears that a killing was unintentional, that the perpetrator acted with no wrongful purpose in doing the homicidal act, that it was done while he was engaged in a lawful enterprise, and that it was not the result of negligence—the homicide will be excused on the score of accident.

*Mead v. State*, 65 Okl.Cr. 86, 83 P.2d 404, 410 (1938). Thus, when the element of

intent to kill is absent, the accidental homicide is excusable, unless the element of intent is substituted by culpable negligence, such as 21 O.S.1981, § 716 (second degree manslaughter), or by the commission of an unlawful act, such as 21 O.S. 1981, § 701.7(B) (felony murder) or 21 O.S. 1981, § 711(1) (misdemeanor manslaughter).

When the accused defends on the basis of accidental homicide, and does not claim self-defense, and the facts support an instruction on excusable homicide, it is reversible error to instruct on justifiable homicide rather than on excusable homicide. *Thompson v. State*, 507 P.2d 1271, 1276–77 (Okla.Crim.App.1973).

Our Uniform Jury Instructions, adopted in 1981, differentiate between excusable homicide (OUJI–CR 725–727) and justifiable homicide (OUJI–CR 743–752). Here, the trial court combined OUJI–CR 725 (Defense of Excusable homicide, accident and misfortune—lawful act) with OUJI–CR 743 (Defense of self-defense—justifiable use of deadly force) in the same jury instruction over appellant's objection. Nor did the trial court issue a complete set of jury instructions on excusable homicide. As such, the jury instructions, taken as a whole, did not correctly state the applicable law, and confused the jury as to appellant's theory of defense. I would, therefore, reverse and remand for a new trial.