## HARRISON MOODY v. STATE.

No. A-5889.   Opinion Filed Aug. 20, 1927.
(259 Pac. 159.)

M. D. Hartsell, Glenn Alcorn, and W. P. Miller, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Muskogee county of manslaughter in the first degree and was sentenced to serve a term of four years in the state penitentiary.

The record discloses a state of facts about as follows:   The defendant is a colored man who lived in the town of Haskell.   On the date charged he shot and killed Bill Guillory, also a colored man.   At the time of the homicide, defendant and deceased were but slightly acquainted.   They had a short time before this had an al-

tercation in a restaurant, deceased at the time being intoxicated and had made some threats because defendant would not buy him a drink of whisky. On the day of the homicide, deceased was intoxicated; he approached defendant, who was seated on the sidewalk, and threatened him. Defendant conducted himself with restraint and went into a colored barber shop. Deceased then went to a restaurant, had some altercation with the proprietor, and after being induced to leave there went to the colored barber shop where defendant was. Deceased apparently did not observe defendant at the time but got in a barber chair to have some work done, but learning that defendant was in the shop began to curse and threaten him. After considerable colloquy defendant left the shop, was gone some 15 or 20 minutes, and returned. Deceased was in the chair with a cloth around his neck, getting a haircut. On the return of defendant, deceased said, "You son of a bitch, I told you to stay out of here," and started toward defendant, who drew a revolver and pointed it at deceased. Another barber said to defendant, "Don't do that, Moody." Defendant then lowered his gun and deceased said, "No; you pulled that gun and you have got to use it;" and he continued to advance; defendant then fired three shots into the body of deceased, from which he died instantly. Deceased was unarmed. Defendant testified that owing to the previous threats of deceased he believed he was armed and the shooting was done in his necessary self-defense.

The information charges manslaughter in the first degree, and its sufficiency to charge this degree of manslaughter is challenged. Counsel for defendant earnestly insist that an information based on subdivision 2 of section 1740, Comp. Stat. 1921, which fails to charge that the homicide was perpetrated in a heat of passion, is insufficient to charge first degree manslaughter.

The charging part of the information is:

"\* \* \* That Harrison Moody \* \* \* did knowingly, willfully, unlawfully, wrongfully, and feloniously make an assault, without justifiable or excusable cause, upon one Bill Guillory, with a certain dangerous and deadly weapon, to wit, a revolver, then and there loaded with powder and bullets, and then and there had and held in the hands of him, the said Harrison Moody, and did then and there feloniously, without justifiable or excusable cause, shoot the said Bill Guillory, then and there inflicting certain mortal wounds upon the said Bill Guillory, of which mortal wounds, the said Bill Guillory did \* \* \* die. \* \* \*"

Section 1740, Comp. Stat. 1921, reads:

"Homicide is manslaughter in the first degree in the following cases:

"First. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.

"Second. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

"Third. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed."

The case of Barker v. Ty., 15 Okla. 22, 78 P. 81, sustains defendant's contention. Our attention has not been called to any subsequent decision by this court upon this point and we know of none, nor has a decision of any other state under a similar statute been cited. In the Barker Case, Burwell, J., speaking for the court, said:

"It is not contended that the first or third subdivisions of this section have any application to this case, but that the indictment must be upheld, if at all, under the second subdivision. Therefore, we will confine our views to it. This statute has been in force in the territory ever since 1890, and the trial courts have repeatedly held that if the killing was effected by means of a dangerous

weapon, it would be manslaughter, although not done in a heat of passion; but we are of the opinion that the clause, 'and in a heat of passion' modifies not only the language, 'but in a cruel and unusual manner,' but also the words, 'or by means of a dangerous weapon.' To state it differently, homicide is manslaughter in the first degree when perpetrated without a design to effect death, but in a heat of passion, and in a cruel and unusual manner, or when committed without a design to effect death, but in a heat of passion and by means of a dangerous weapon. In other words, homicide is not necessarily manslaughter in the first degree, simply because death is produced by means of a dangerous weapon."

If the Barker Case be followed, this case must be reversed for insufficiency of the information, and, while that case is persuasive and we are reluctant to give a different construction to this section of the statute, we feel constrained to do so. The better grammatical construction and the more common sense interpretation is found in the view that where an information charges a homicide without a design to effect death by means of a dangerous weapon, although not alleging it to have been done in a heat of passion, it is a charge of manslaughter in the first degree. That is, the conjunction "and" and "or" connect two co-ordinate clauses, and the first part of the third subdivision means, "Homicide is manslaughter in the first degree when perpetrated without a design to effect death and in a heat of passion but in a cruel and unusual manner," and the second part means, "Homicide is manslaughter in the first degree * * * when perpetrated without a design to effect death by means of a dangerous weapon. * * *" This is what the information alleges, and, adopting this construction of the statute, it sufficiently charges manslaughter in the first degree.

It is next contended that the court erred in admitting evidence on the part of the state as to the general reputation of defendant. This question was opened by defendant offering testimony that prior to the homicide he bore a

good reputation as a peaceful and quiet citizen so far as being quarrelsome was concerned. In developing this matter it was disclosed that defendant had been charged with violating the prohibitory liquor laws. Upon cross-examination it was shown by these witnesses that defendant had the reputation of being a bootlegger. Where a defendant offers testimony of his good reputation, the question is then open and the state may in rebuttal attack the reputation and character of the accused. It is generally held, however, that the evidence of reputation should be limited to the traits involved. The rule is laid down in 3 Underhill, § 137, p. 174, as follows:

"Whenever the accused shall introduce evidence of good character, rebutting evidence to show his bad character, but only as regarding the trait involved in the crime charged against him, is always admissible."

See Montgomery v. State, 11 Okla. Cr. 415, 142 P. 1048, 147 P. 1054; Worley v. State, 32 Okla. Cr. 1, 239 P. 683.

Except for the fact that the question was opened by the defense and it was shown that defendant had the reputation of violating the prohibitory law, the action of the county attorney would probably be prejudicial error, but where, as here, the evidence in the first instance disclosed the reputation of defendant as having violated the liquor law, the fact that the state further inquired about this matter will be unavailing, particularly where as in this case the minimum punishment for the offense charged is assessed.

The argument is also pressed that the county attorney was guilty of prejudicial conduct in the course of the trial and in his argument. This assignment is directed to several different matters, among them the questioning of the defendant as to his having been convicted for a violation of the prohibitory law. The record discloses that this matter was unnecessarily pursued by the state. It is also directed to the argument that after defendant left the barber

shop he went to a tailor shop and procured a pistol and returned, when the shooting took place, as being a statement of facts outside the record. This contention cannot be sustained. It is plain that the statement was not made as of a fact in evidence but as a deduction from the evidence. As such, the deduction is reasonable and logical. It is further argued upon this point that there was misconduct in reference by the county attorney to the absence of one Burke, and in stating that the state had looked in vain for the witness. Burke conducted the tailor shop where defendant went after leaving the barber shop, and from whence he returned just before the homicide. It was the theory of the state apparently that defendant procured the pistol with which the killing was done at the tailor shop. Defendant was asked about this on cross-examination. The inference sought to be conveyed is that the evidence of Burke, if he were obtained, would be unfavorable. The error does not require a reversal.

There are errors in the record, but it must have been manifest to the jury that defendant, provoked by abusive language on the part of deceased, left the barber shop, procured a pistol, and returned having in mind that if the quarrel should be renewed by deceased to shoot him, and that deceased in a drunken and practically irresponsible condition did renew the quarrel and was shot and killed. There is no miscarriage of justice, and no reason for a reversal is apparent.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.