James Gregory SMITH, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–87–426.

Court of Criminal Appeals of Oklahoma.

Dec. 15, 1988.

Clark S. Wood, Sallisaw, for appellant.

Robert H. Henry, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

James Gregory Smith, appellant, was tried by jury for the crime of Murder in the First Degree in Case No. CRF–83–297 in the District Court of Muskogee County. Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at life imprisonment. The trial court sentenced appellant in accordance with the jury's verdict. From this

judgment and sentence, appellant appeals to this Court.

For a recitation of the facts concerning this case, *see Smith v. State*, 727 P.2d 1366 (Okla.Crim.App.1986). Appellant is the son of Lois Nadean Smith, who was also convicted of murder for the death of Cindy Bailee.

In his first assignment of error, appellant contends that the trial court erred by admitting certain photographs into evidence. Specifically, appellant asserts that the photographs were more prejudicial than probative. In *Smith v. State*, 727 P.2d 1366, 1370 (Okla.Crim.App.1986), this Court found that the photographs now complained of, corroborated the testimony of the witnesses and were not gruesome. We held that their probative value outweighed the danger of prejudice. Thus, this assignment of error is without merit.

During its case-in-chief, the State presented Tom McGowin to testify as to a conversation he had with the appellant during a trip from Gore, Oklahoma to Tahlequah, Oklahoma the afternoon following the murder. Mr. McGowin had previously given a tape recorded statement to the prosecution, wherein he stated that during the trip to Tahlequah the appellant had discussed the details concerning the murder of Cindy Bailee. However, when placed on the witness stand, Mr. McGowin testified that he could not recall the contents of the conversation. Mr. McGowin further stated that he had informed the prosecutors earlier the morning of trial that his prior statement contained some errors. The prosecutor then asked Mr. McGowin if he remembered the prior statement he had given concerning his conversation with the appellant. The witness replied that he did remember giving the statement but he again denied remembering the details of the conversation and stated that he was under stress at the time he gave the statement. Over the appellant's objection, the State was allowed to read into evidence questions and answers from a transcript of the prior taped interview.

Appellant asserts that the trial court allowed the prosecution to improperly impeach its own witness. Title 12 O.S. 1981, § 2607 states that "the credibility of a witness may be attacked by any party, including the party calling him." Thus, the issue before this Court is whether there are any limitations placed upon a party when impeaching its own witness. Our pre-code cases imposed the restrictions of "surprise" and "prejudice". *See Mackey v. State*, 526 P.2d 1161, 1165 (Okla.Crim.App. 1974). However, 12 O.S.1981, § 2607 and Federal Rule (FR) 607 have no such limitations. The Advisory Committee's note to FR 607 states,

> "The traditional rule against impeaching one's own witness is abandoned as based on false premises. A party does not hold out his witnesses as worthy of belief, since he rarely has a free choice in selecting them. Denial of the right leaves the party at the mercy of the witness and the adversary."

Thus, a party may call a witness during the presentation of its case-in-chief solely for the purpose of securing the admission of the prior inconsistent statement under the guise of impeachment when it is really introduced for substantive purposes. 1 L. Whinery, *Guide to the Oklahoma Evidence Code*, 202 (1985).

One commentator suggests that the pre-rules test of surprise and prejudice should be applied before an inconsistent statement that does not qualify for admission as substantive evidence under FR 801(d)(1)(A) is admitted. *See* Graham, *Examination of a Party's Own Witness Under the Federal Rules of Evidence: A Promise Unfulfilled*, 54 Tex.L.Rev. 917 (1976). Three States continue to follow this common law rule of surprise and prejudice, and have done so by codifying the requirements. *See* Fla.Stat.Ann. § 90.608; Mich.R.Evid. 607; Ohio R.Evid. 607. Those three States advocate a rule of exclusion regarding a party's impeachment of his own witness. This is directly contrary to FR607 and 12 O.S.1981, § 2607 which favors admission of this evidence.

Another view approaches the issue from the standpoint that the trial judge should utilize FR 403 and strike a balance between

the probative value of the statement and any unfair prejudice suffered by its admission into evidence. *See* Saltzburg and Redden, *Federal Rules of Evidence Manual 336* (3d. ed. 1982). While this writer prefers the surprise and prejudice test, I must yield to the fact that the balancing approach reaches a more uniform application, as it is applied by a majority of the States,[1] and conforms to the intent behind Section 2607. However, our abolition of the surprise and prejudice requirements should not be considered as a "blanket approval" of all impeachment evidence. Section 2403, and its factors of exclusion, requires the trial court to weigh the proffered evidence and determine its probative value for impeachment purposes.

In the present case, the statement appears to have been introduced to help prove premeditation in support of the charge of Murder in the First Degree. The evidence also provided the only corroboration to the testimony of Teresa Baker, the only eye witness of the murder to testify. We find such evidence highly relevant as to the conversation concerning the homicide had in the car the following day, and the only way the State could impeach its witness' sudden lapse of memory. Moreover, the defense was provided with a copy of the witness' prior statement and allowed lengthy cross-examination. We find that the probative value of the statement for impeachment purposes outweighed any prejudice suffered by the appellant.

In his third assignment of error, appellant contends that the trial court erred in omitting instructions on Voluntary Intoxication and First Degree Manslaughter. It is well settled that instructions to be given the jury are within the discretion of the trial court, and its judgment thereon will not be disturbed so long as the instructions given, when taken as a whole, fairly and accurately state the applicable law. *Redden v. State*, 739 P.2d 536, 538 (Okla. Crim.App.1987).

We have reviewed the record and find insufficient evidence to warrant instructions on First Degree Manslaughter or Voluntary Intoxication. A First Degree Manslaughter instruction was not warranted because the appellant was not engaged in the commission of a misdemeanor, nor was it a homicide perpetrated in the heat of passion, or while resisting an attempt by the person killed to commit a crime. *See* generally, 21 O.S.1981, § 711; *McDonald v. State*, 674 P.2d 51, 54 (Okla.Crim.App. 1984). Moreover, there was no competent evidence demonstrating that appellant lacked control of his mental faculties. We find no error in the trial court's refusal to instruct on First Degree Manslaughter or Voluntary Intoxication.

In his final assignment of error, the appellant contends that prejudicial error resulted from both defendants being represented at trial by the same attorney. We find this issue to have been specifically addressed in *Smith v. State*, 727 P.2d 1366, 1369 (Okla.Crim.App.1986), wherein this Court stated,

"As nothing in the record exists to alert the trial judge that a conflict of interest existed, and the appellant has not shown an actual conflict of interest, but merely speculated on the possibilities, we find this assignment of error to be without merit."

Insomuch as appellant has speculated on the possibilities of conflict, we likewise find this assignment of error to be without merit.

For the foregoing reasons, the judgment and sentence is AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

I write separately only to expand on this Court's abolition of the "surprise" and "prejudice" requirements under 12 O.S. 1981, § 2607. While I agree that the application of such requirements would amount to "judicial legislation," I favor close scruti-

---

**1.** Arizona, Arkansas, Delaware, Hawaii, Idaho, Iowa, Maine, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, South Dakota, Texas, Utah, Vermont, Washington, Wisconsin and Wyoming.

ny of evidence admitted under this section in order that we may guard against placing "before the jury prior inconsistent statements not admissible as substantive evidence." Graham, *Examination of a Party's Own Witness Under the Federal Rules of Evidence: A Promise Unfulfilled,* 54 Tex.L.Rev. 917, 977 (1976).

The adoption of the balancing test of 12 O.S.1981, § 2403 to limit the admissibility of impeachment evidence conforms to the legislative intent behind Section 2607. *See* Note, *Impeachment of One's Own Witness Under Rule 607,* 32 Okl.L.Rev. 393 (1979). Although the balancing approach is much more flexible than the "unsatisfactory mechanical approach" of the "surprise-prejudice" test, such impeachment evidence is not without limits. *Id.* at 397. A close scrutiny of the proffered evidence under the standards of Section 2403 is favored. Section 2403 looks to the probative value of the evidence in relation to its prejudicial effect. Under this analysis, probative value would be measured by the value of the evidence for impeachment purposes. Such factors as the reliability of the source used to introduce such testimony, the reliability of the statement, and its impeachment value would be considered. Balanced against the probative value of the statement is the degree of prejudice caused to the opposing party. When considering the prejudicial effect, factors such as the actual content of the statement, the possibility that the jury will consider it as substantive evidence, and the impeachment value will be scrutinized.

This new approach to Section 2607 forces the trial judge to weigh the evidence to determine its admissibility. The factors stated above shall be considered when determining the admissibility of the impeachment evidence under Section 2403. Furthermore, Section 2403 also requires consideration of unfair prejudice, possible misleading the jury and unfair or harmful surprise.

Accordingly, I concur in the affirmance of appellant's judgment and sentence.