**Howard Lee CAMRON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–88–971.

Court of Criminal Appeals of Oklahoma.

March 23, 1992.

**50**

William John Patterson, Tulsa, for appellant.

Robert H. Henry, Atty. Gen. of Oklahoma and Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

LUMPKIN, Vice Presiding Judge:

Appellant Howard Lee Camron was tried by jury and convicted of First Degree Manslaughter (21 O.S.1981, § 711) and Possession of a Sawed Off Shotgun (21 O.S.1981, § 1289.18) in Case Nos. CRF–87–80 and CRF 87–142, respectively, in the District Court of Delaware County. The jury recommended a punishment of thirty (30) years imprisonment and two (2) years imprisonment, respectively. The trial court sentenced accordingly and it is from this judgment and sentence that Appellant appeals.

Appellant was convicted of the beating death of his wife, Karen Sue Camron. Appellant and the deceased were separated at the time. During the early morning hours of May 4, 1987, the deceased arrived at Appellant's residence outside Jay, Oklahoma. There she found Appellant in bed with Florence Chandler. The evidence was disputed as to whether the deceased retrieved a shotgun from Appellant's shop next to his home and fired a shot through a window into the headboard of Appellant's bed or whether the Appellant later put the gunshots in the headboard himself. Testifying for the State, Ms. Chandler stated that she only heard one shot which came from outside the house prior to the time the victim entered the bedroom. In his defense, Appellant testified that he heard two (2) shots which broke the window and struck the headboard and pillow in the bed where he and Ms. Chandler slept.

In any event, after the victim entered the bedroom, a struggle ensued between Appellant and the deceased. Appellant testified that the struggle ceased long enough for him to phone his cousin, Steve Rhine, to come and take the deceased to the hospital. Rhine arrived to find the deceased severely beaten and proceeded to take her to the local emergency room. Unconscious by the time she arrived at the hospital, the deceased was shortly thereafter transported to a Tulsa hospital where she died within a day.

In his first assignment of error, Appellant challenges the sufficiency of the evidence. Appellant argues that he was charged in the felony information with committing the homicide in both of the two statutorily proscribed means, that is in a cruel and unusual manner and by means of a dangerous weapon. He contends that the State subsequently failed to present sufficient evidence of either manner to sustain a verdict of guilty.

The felony information filed against Appellant reads in pertinent part as follows:

That said defendant, ... did unlawfully, wilfully and feloniously without a premeditated design to effect death, did effect the death of one Karen Sue Camron in a cruel and unusual manner and while the said defendant was in the heat of passion, in manner and form as follows, to wit: striking Karen Sue Camron about the head, arms, hands and shoulder with a blunt instrument being a sawed off .410 gauge shotgun approximately 16 inches in length and made of metal and wood, and said defendant did then and there and thereby inflict certain mortal wounds in and upon the body of the said Karen Sue Camron, from which mortal wounds the said Karen Sue Camron did then and there languish and die ... (O.R. 1)

In *Moody v. State*, 38 Okl.Cr. 23, 259 P. 159 (Okl.Cr.1927), reaffirmed in *Smith v. State*, 652 P.2d 303, 304 (Okl.Cr.1982), (*overruled on other grounds*), this Court held that 21 O.S.1981, § 711, sets forth two ways in which the offense of first degree manslaughter may be committed: 1) when perpetrated without a design to effect death and in a heat of passion but in a cruel and unusual manner or 2) when perpetrated without a design to effect death by means of a dangerous weapon.

The information in the present case alleges that Appellant committed the offense of first degree manslaughter in a cruel and unusual manner by beating the deceased to death with a shotgun. The information does not allege the commission of the offense by means of a dangerous weapon. While a shotgun may be described as a dangerous weapon, here the focus of the criminal charge was Appellant's use of a blunt instrument to beat the deceased so as to cause her death. Merely because the blunt instrument used was a shotgun does not transform the information into alleging both manners of death.

Our review of the evidence shows that sufficient evidence was presented to prove that the homicide occurred in a cruel and unusual manner. Medical experts testified that the deceased died of a subdural hematoma due to a blunt injury to the head. The deceased also suffered from numerous bruises, lacerations and abrasions, from head to legs. Fifteen (15) to twenty (20) different points of impact were found on the body, with at least seven (7) different points of impact found exclusively on the face and head. Both the external and internal injuries were consistent with those received from a beating.

The blood covered shotgun was recovered from the Appellant's home. Blood splatters covered the gun from barrel to butt. Analysis of the blood revealed that it was human blood, but the experts were unable to type the blood. Additionally, hair was found on the gun, but further analysis was not possible. Blood was found throughout Appellant's home, specifically in the front room and hallway. In the bathroom blood was found on the shower curtain and underneath the vanity.

Steve Rhine testified that when he responded to Appellant's call, Appellant was angry and "kind of swung" at the deceased. Standing between the two, Rhine received a blow to the shoulder. Rhine could not remember if Appellant had a weapon in his hands. Rhine described the deceased as "beaten up" with "quite a bit" of blood on her. Blood from her head soaked her blouse and dripped to the ground around her. Unable to walk unassisted, Rhine had to help the deceased to his pickup. The evidence further shows that the deceased did not die instantly but suffered for several hours before losing consciousness.

We find this sufficient, competent evidence from which the jury could reasonably

conclude that the Appellant committed the offense of first degree manslaughter in a cruel and unusual manner by beating the deceased to death with the shotgun. See *Phillips v. State*, 641 P.2d 556, 560 (Okl.Cr. 1982); *Dandridge v. State*, 519 P.2d 529, 536 (Okl.Cr.1974).

"Where there is evidence, although circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight and credibility and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence." *Hunter v. State*, 478 P.2d 1001, 1002 (Okl.Cr.1970), quoting *Stumblingbear v. State*, 364 P.2d 1115, 1117 (Okl.Cr.1961).

▮ Further, Appellant argues that the State failed to prove that the death of the deceased did not occur under such circumstances as constitute justifiable homicide. Justifiable homicide in self-defense occurs when one person, not at fault in bringing on the struggle, kills another under apparent necessity to save himself from death or great bodily harm. *Perez v. State*, 51 Okl.Cr. 180, 300 P. 428 (1931). The apprehension of danger and the belief of the necessity which would justify killing in self-defense is not to be tested by the defendant's honesty or good faith but by whether the defendant had reasonable grounds to believe the killing necessary. *West v. State*, 617 P.2d 1362, 1365 (Okl.Cr. 1980).

The evidence presented by the State showed that Appellant did not have reasonable grounds to believe that he was about to suffer death or severe injury from the deceased. Although Appellant was only three inches taller and fourteen pounds heavier than the deceased, it is clear that he had the advantage over the deceased.

This conclusion is supported by Appellant's own testimony. He testified that he heard a gunshot from outside and awoke to find the deceased standing over his bed with a shotgun in her hands. Appellant knocked her to the floor and retrieved the gun. A struggle ensued between the deceased, Appellant and Ms. Chandler. The struggle continued throughout the house, with the deceased getting the gun and the Appellant taking it from her two more times. The only injuries suffered by the Appellant were skinned knuckles and a hurt toe. The only evidence of a gunshot was found in the headboard which had been pushed up against the bedroom window.

Additionally, Florence Chandler testified that she awoke to the sound of a single gunshot coming from outside the house. Looking to Appellant she saw him in the bed next to her, not having responded to the gunshot.

Although Appellant claimed he acted in self-defense, sufficient evidence was presented to show that the deceased was unarmed for a good deal of the struggle and presented no serious threat to Appellant. Thus, the jury could properly find that the homicide was not justifiable. *See Eads v. State*, 640 P.2d 1370, 1371 (Okl.Cr. 1982).

▮ In his second assignment of error, Appellant argues that the trial court erred in admitting evidence of other crimes. This evidence came in the form of testimony from Deputy Carl Sloan that Appellant had tampered with State's Exhibit No. 17, the murder weapon, during the pendency of the trial. The record reveals that after the State had rested its case in chief it was brought to the court's attention that State's Exhibit No. 17, the shotgun, had been removed from the courtroom. Appellant admitted to the court that he had taken the gun. He explained that he had taken the gun apart and placed part of it in his pickup and part in his attorney's office across the street. Accompanied by a deputy, Appellant was taken to retrieve the gun. When the gun was returned to the courtroom it was noted that the initials of the criminalist who had examined the shotgun had been scratched off, and the sticker identifying the gun as State's Exhibit No. 17 had been removed.

This incident was first brought to the jury's attention during the cross-examination of Appellant. Upon inquiry of the

removal of the gun from the courtroom, Appellant replied "I take the fifth amendment" and refused to answer any questions. On rebuttal, the State presented Deputy Sloan who testified to the circumstances surrounding Appellant's removal of the shotgun from the courtroom.

At trial and now on appeal, Appellant argues that the tampering evidence was inadmissible under 12 O.S.1981, § 2404(B), and because the court failed to follow the guidelines for admitting evidence of other crimes set forth in *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979). During an in-camera hearing, the trial court recognized the prejudicial nature of this evidence but found it admissible under *Wills v. State*, 636 P.2d 372 (Okl.Cr.1981).

In *Wills* evidence was admitted that the defendant had paid a witness one thousand dollars ($1,000.00) to leave the state and be unavailable for trial. This Court held the evidence was properly admitted finding that an effort by an accused to directly or indirectly suppress or destroy evidence is relevant as a circumstance tending to show guilt.

After a thorough review of similar issues from other jurisdictions, this Court determined that such actions as attempting to improperly influence a witness, attempts to destroy evidence, flight to avoid arrest, etc., are admissions by conduct. An admission by conduct is a distinct concept. Such admissions can have independent probative value on the issue to be tried.

This Court further stated in *Wills* that no violation of *Burks* occurred as the evidence was newly discovered by the prosecutor and was made known to the defense immediately. The defense did not challenge the district attorney's claim that the evidence was newly discovered. In fact, it was admitted by the defense.

In the present case, the State presented evidence that the shotgun was in Appellant's possession on May 4, 1987, and that Appellant did not have a federal firearms license authorizing possession of the weapon. Evidence that Appellant attempted to destroy or secrete the weapon was relevant to proving his illegal possession. Further, evidence of Appellant's tampering was discovered during the pendency of the trial. As soon as it was discovered, it was made known to both the State and the defense, with no challenge from the defense as to the newly discovered nature of the evidence.

Therefore, we find that the trial court properly admitted the evidence pursuant to the holding of *Wills*. Further, we are satisfied that the trial court considered the prejudicial nature of the evidence, and properly determined that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. 12 O.S.1981, § 2403.

The trial court also properly informed the jury as to the weight to be given this evidence. Instruction No. 35 provided:

> You are instructed that under certain circumstances the conduct of the accused after a crime may be considered against him as evidence of consciousness of guilt. Consciousness of guilt may be inferred from an intent or attempt by the accused to conceal, alter, or remove evidence of the crime. If you find as fact that the defendant did attempt to conceal, alter or remove evidence of the crime, you may infer consciousness of guilt. However, you are not bound to draw that inference. It is for you and you alone as fact finders to accept or reject this inference of consciousness of guilt and to give whatever weight, if any, you wish to this inference. (O.R. 120)

Accordingly, we find no error in admitting evidence of Appellant's tampering with the evidence. This assignment of error is denied.

■ In his third assignment of error, Appellant contends that he was denied effective assistance of counsel. Initially, Appellant complains that trial counsel failed to present evidence of justifiable homicide. Appellant and the deceased were the only witnesses to the entire incident. Florence Chandler [1] and Steve Rhine witnessed only

---

1. Florence Chandler testified that she hid underneath the bed shortly after the deceased entered

portions of the evening's events. Appellant does not relate any evidence which could have supplemented his own testimony or assisted in the cross-examination of Chandler and Rhine which would establish a defense of justifiable homicide. The evidence simply was not there and it is improper for Appellant to expect counsel to add facts which were non-existent and to argue a theory not supported by the facts.

■ Appellant further argues that counsel was ineffective for failing to preserve the requested instructions in the record. The record indicates that defense counsel provided the court with written requested instructions. The record does clearly indicate that the court refused to give the instructions requested by the defense stating that they were either already covered in the instructions given or not the appropriate law. Defense counsel objected to this ruling but failed to include the requested but refused instructions in the record.

■ It is Appellant's responsibility to ensure that a sufficient record is provided to this Court on appeal in order to assure a proper determination of the issues raised. *Hill v. State*, 745 P.2d 410, 411 (Okl.Cr. 1987); *Cardenas v. State*, 695 P.2d 876, 878 (Okl.Cr.1985). By failing to include the refused instructions in the record, counsel has failed in his responsibility.

However, we find that Appellant was not unduly prejudiced by this error. Appellant has failed to show that but for this action, the outcome of the case would have been different. We have reviewed the instructions given to the jury and find that they sufficiently state the applicable law.

■ Appellant also argues that counsel was ineffective for failing to argue for proposed instructions and for failing to better prepare and present evidence of the deceased's prior violent history.

■ The legal arguments to be made, the witnesses to be called, the examination of those witnesses and the recording of arguments are matters of trial strategy. This Court refuses to second guess trial

strategy on appeal. *Smith v. State*, 650 P.2d 904, 908 (Okl.Cr.1982). *See also Dutton v. State*, 674 P.2d 1134 (Okl.Cr.1984). An appellate court should not retrospectively question trial strategy if the techniques used were within the required standard of reasonable competence. *See, McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Frederick v. State*, 667 P.2d 988, 992 (Okl.Cr. 1983).

■ Any arguments concerning the jury instructions by either the State or the defense were not recorded. A decision not to have arguments on proposed jury instructions recorded is not ineffective assistance absent supplementation of the record by affidavit or pleading, showing alleged prejudicial occurrences. *See Stafford v. State*, 665 P.2d 1205, 1213 (Okl.Cr.1983).

Further, evidence of the deceased's history of violence was introduced. Although counsel initially had a difficult time in getting the opinion testimony admitted, four witnesses, including the Appellant, testified to specific acts of violence committed by the deceased. Appellant has failed to show that there is a reasonable probability that had further evidence of the deceased's violent acts been presented, the outcome of the case would have been different.

■ Appellant also contends that counsel was ineffective for his handling of the incident involving Appellant's tampering with the evidence. After it had been discovered that Appellant had removed the shotgun, on the advice of counsel, Appellant admitted to the court that he had removed the shotgun from its place on the court reporter's bench, taken the gun apart and placed part of it in his truck and part in his attorney's office across the street. Outside of the jury's knowledge, Appellant, accompanied by a deputy, retrieved the gun.

Subsequently, during cross-examination of Appellant, the prosecutor inquired as to whether Appellant had removed State's Exhibit 17 from the courtroom. Appellant

the house and did not see a fight between Appellant and the deceased.

replied "I take the fifth amendment." (Tr. 535)

On surrebuttal, Appellant again took the witness stand and was asked on direct examination why he had previously taken the fifth amendment. Appellant stated that his decision to refuse to answer the questions was his own, he admitted taking the shotgun from the courtroom, he apologized to the court for his conduct, and stated that his defense counsel had no prior knowledge of his conduct.

Appellant now argues on appeal that by calling him to the stand to withdraw his earlier invocation of the Fifth Amendment and to explain his actions to the jury counsel flagrantly violated his ethical duty to not intentionally prejudice or damage his client during the course of the professional relationship.[2] Initially we must note that it is not clear in the record whether Appellant's decision to testify on surrebuttal was his own or made on advice of counsel. In either event, the handling of the incident by defense counsel was a matter of trial strategy.

 Further, Appellant has failed to show how he was prejudiced. In fact, Appellant may have received a benefit from his testimony and apology in the form of a less severe sentence than he would have received otherwise. The court had ruled that evidence of the tampering was admissible and Appellant's refusal to answer any questions about the subject left the jury to speculate on the extent of his involvement. By admitting what he had done and apologizing for his conduct, the jury could have been disposed to impose a lighter sentence.

 Absent a showing of incompetence, the Appellant is bound by the decisions of his counsel and mistakes in tactic and trial strategy do not provide grounds for subsequent attack. *Davis v. State*, 759 P.2d 1033, 1036 (Okl.Cr.1988). Here counsel's conduct did not prejudice Appellant, any prejudice was the result of Appellant's own conduct.

 Appellant also complains about counsel's failure to object to testimony by

Deputy Carl Sloan that he observed blood in several places in Appellant's home. Appellant argues that no foundation was laid for Deputy Sloan to give such opinion testimony.

We have previously held that an ordinary witness may testify that certain marks, spots or discolorations observed by him were in his opinion blood. *Lee v. State*, 661 P.2d 1345, 1354 (Okl.Cr.1983); *Cherry v. State*, 518 P.2d 324, 328 (Okl.Cr.1974). Deputy Sloan did not attempt to testify as to the type of blood or give any scientific conclusions. He merely testified to facts which were within his personal knowledge gained from personal observation. Therefore, his testimony was properly admissible under 12 O.S.1981, § 2701, and no objection from defense counsel was necessary.

We have examined these allegations as they pertain to the entire record and find that they do not establish incompetency of counsel under the test pronounced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, the benchmark for judging claims of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064.

Merely pointing out alleged insufficiency of investigation, possible errors in counsel's judgment and failure to present allegedly important evidence when examined in light of our disposition of other alleged errors at trial, does not demonstrate inadequate representation utilizing the *Strickland* standard.

 In hearing a claim of ineffectiveness of counsel, the reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered

---

2. 5 O.S.1981 Ch. 1 App. 3, DR 7–101(A)(3).

sound trial strategy. *Strickland,* 466 U.S. at 694–696, 104 S.Ct. at 2070, 80 L.Ed.2d at 699. The burden rests with the Appellant to show that there is a reasonable probability that, but for any unprofessional errors by counsel, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.,* 466 U.S. at 698, 104 S.Ct. at 2070.

Appellant has failed to meet that burden in the present case. The evidence of Appellant's guilt was strong. We do not find that, but for counsel's alleged errors, a different result would have been obtained. The record shows that counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney in light of his overall performance. Accordingly, this assignment of error is denied.

■ Appellant contends in his fourth assignment of error that the trial court erred in failing to instruct the jury on the lesser included offense of second degree manslaughter.

The trial court is to instruct on every degree of homicide which the evidence tends to prove. *Tarter v. State,* 359 P.2d 596, 601 (Okl.Cr.1961). *See also Lee v. State,* 700 P.2d 1017, 1019 (Okl.Cr.1985). Here the evidence showed that Appellant intentionally struck the deceased with the shotgun. Therefore there was no evidence to support a second degree manslaughter instruction based upon negligence.[3] *Kapocsi v. State,* 668 P.2d 1157, 1163 (Okl.Cr. 1983).

■ Appellant also contends that the trial court erred in failing to give instructions on justifiable homicide. Our statutes recognize the defenses of both excusable and justifiable homicide. The defense of excusable homicide, 21 O.S.Supp.1985, § 731, is predicated upon accident and misfortune and limited to the fact situations identified in the statute. Justifiable homicide is a defense if committed by a public officer acting within the provisions of 21

O.S.1981, § 732. In addition, the defense of justifiable homicide is available to any person when the homicide is committed under one of the three fact situations set forth in 21 O.S.1981, § 733. Section 733 establishes the perimeters of the defense of self-defense. *See, e.g., Lee v. State,* 637 P.2d 879, 884 (Okl.Cr.1981). Appellant's theory of defense was that of self-defense, i.e. justifiable homicide. Appellant maintained that the decedent was the aggressor, shooting at him as he slept, forcing him to react violently in an attempt to save his life.

Jury instructions No. 22–27 adequately set forth the law of self defense and justifiable homicide. Instruction No. 23 specifically defined when a person is justified in using deadly force in self defense. Instruction No. 24 explained that the State had the burden to prove that Appellant was not acting in self-defense, and Instructions No. 25–27 particularly defined and addressed the role of the aggressor and the inability of the aggressor to claim self-defense. (O.R. 117) Our thorough examination of these instructions reveals that the Appellant's defense theory, and the law of self-defense and justifiable homicide were adequately set before the jury in these instructions. *See Davis v. State,* 665 P.2d 1186, 1196 (Okl.Cr.1983); *Dennis v. State,* 561 P.2d 88, 95 (Okl.Cr.1977); *Thompson v. State,* 507 P.2d 1271, 1277 (Okl.Cr.1973). This assignment of error is therefore denied.

■ Appellant contends in his fifth assignment of error that he was denied a fair trial by prosecutorial misconduct during closing argument. Initially, Appellant objects to comments made by the prosecutor concerning testimony given in a deposition by Florence Chandler. The prosecutor pointed out that Ms. Chandler had given inconsistent statements concerning whether or not the deceased was holding a shotgun when she entered the bedroom. The defense objected to this remark. The trial

---

**3.** 21 O.S.1981, § 716, Manslaughter in the second degree is defined as every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide.

court admonished the jury to rely on their own memory of the evidence and that "they may draw whatever inferences they wish from that testimony." (Tr. 574)

A review of the record shows that the State did attempt to impeach its witness on the issue of the deceased's possession of the shotgun by referring to Chandler's deposition of February 1988. Therefore, we find the references made during closing argument to Ms. Chandler's inconsistent statements were proper comment on the evidence well within the bounds of legal argument.

■ Appellant further complains that the prosecutor improperly injected his personal opinion of the evidence into this closing argument. The comment was not met with any contemporaneous objection by Appellant, therefore we will review only for fundamental error. *Ashinsky v. State*, 780 P.2d 201, 205–206 (Okl.Cr.1989); *Gaines v. State*, 568 P.2d 1290, 1293 (Okl.Cr.1977).

In commenting on the sequence of events leading up to the homicide, the prosecutor admitted that the deceased initiated the confrontation stating:

I'll guarantee you that when she got out there and she walked in and she saw them in bed and she was mad. I think I would be if it was my house. (Tr. 600)

While the prosecutor is to refrain from giving his personal opinion as to the defendant's guilt and vouching for the credibility of the witnesses, this isolated comment was not so egregious as to prejudice the Appellant. See *Dunagan v. State*, 734 P.2d 291 (Okl.Cr.1987).

■ Finally, Appellant objects to comments made concerning his tampering with the evidence. The record shows that no objection was made to these comments at trial, therefore we will review only for fundamental error. *Harvell v. State*, 742 P.2d 1138, 1142 (Okl.Cr.1987).

We have reviewed the identified comments and remarks and do not find them so prejudicial as to constitute fundamental error. *Thomason v. State*, 763 P.2d 1182 (Okl.Cr.1988); *Smith v. State*, 737 P.2d 1206 (Okl.Cr.1987), *cert. denied* 484 U.S.

959, 108 U.S. 358, 98 L.Ed.2d 383 (1987). The comments were reasonable inferences from the evidence well within the permissible range of closing argument. Accordingly, this assignment of error is denied.

■ In his sixth assignment of error, Appellant contends that his sentence of thirty (30) years imprisonment constitutes excessive punishment. The question of excessiveness of punishment must be determined by a study of all the facts and circumstances of each case. *Rogers v. State*, 507 P.2d 589, 591 (Okl.Cr.1973). This Court does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances that the sentence is so excessive as to shock the conscience of the Court. *Huntley v. State*, 750 P.2d 1134, 1136 (Okl.Cr. 1988). Generally, sentences that are within the statutory limits will not be disturbed on appeal. *Luman v. State*, 638 P.2d 472 (Okl.Cr.1981).

Appellant directs this Court to *Ussery v. State*, 758 P.2d 319 (Okl.Cr.1988), wherein we modified the sentence of life imprisonment imposed upon conviction for first degree manslaughter to forty-five (45) years imprisonment. We were persuaded by the comments of the trial judge and by argument of counsel that imposition of the maximum sentence in that case might have been so excessive as to shock the conscience of the court. We therefore considered four factors which weighed in favor of leaving the sentence undisturbed and five factors which tended to favor mitigation of punishment.

Appellant has provided us with mitigating factors which he shares with *Ussery*. These are (1) Appellant's apparent and understandable fear of injury at the hands of the deceased; (2) the fact that Appellant did call a relative to take the deceased to the hospital, and that she was still conscious when she left his residence; (3) the fact that Appellant twice called authorities to the scene to investigate, and asked about the deceased's condition; (4) the evidence from a number of prominent citizens of Delaware County of Appellant's good character. Further mitigating factors pointed

out by Appellant are (5) the lack of evidence that the deceased's death was caused by a dangerous weapon, and the deceased herself instigated the violence with a dangerous weapon; (6) the Appellant twice called police, and did not attempt to leave the scene prior to the police arriving; and (7) the Appellant has no prior felony conviction.

Factors provided by the State which weigh in favor of leaving the sentence undisturbed include 1) the existence of an unjustified homicide brought about in a cruel and unusual manner by savagely beating the deceased with a shotgun; 2) Appellant's waiver of a pre-sentence investigation report and his ultimate failure to participate in its compilation; and 3) Appellant's lack of remorse.

Weighing all of these factors, along with other factors revealed through our own research, we find that thirty (30) years imprisonment is not an excessive sentence under the particular facts and circumstances of this case. Appellant's aggressive conduct toward the deceased and the savage beating inflicted upon her by the Appellant, combined with his attempts to destroy evidence (cleaning up the blood splattered house) and his lack of remorse, weigh more than all seven of the mitigating factors promoted by Appellant. Accordingly, we find that the sentence is not excessive and this assignment of error is denied. After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence is AFFIRMED.

LANE, P.J., and PARKS, J., concur.

BRETT, J., concurs in result.

JOHNSON, J., specially concurs.

JOHNSON, Judge, specially concurring:

While I agree that appellant's conviction should be affirmed, I write separately only to comment in relation to appellant's fifth assignment of error concerning prosecutorial misconduct. I feel the record should be clear that Ms. Chandler was questioned

during direct examination by the prosecutor about her prior inconsistent testimony. (Tr. 86, 87) Such impeachment of a witness by the party offering the evidence is proper. *See Smith v. State*, 766 P.2d 1007, 1008 (Okl.Cr.1988). Thus, the references made during closing argument were proper comment on the evidence.